UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAMES VAN PELT,<br>    Plaintiff,<br><br>v.<br><br>DONATO PALMA and LUKE RASILE<br>    Defendants. | No. 3:17-cv-00861 (MPS) |

### RULING ON THE DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Plaintiff James Van Pelt filed this action against Defendants East Haven Police Officers Donato Palma and Luke Rasile (collectively, "Defendants") after Defendants allegedly threw him to the ground and beat him while attempting to take him into custody. Defendants move to dismiss Van Pelt's Fourth Amendment excessive force claim, and seek to convert their motion to dismiss into a motion for summary judgment on the grounds that video recordings submitted as exhibits demonstrate that there is no genuine issue of material fact in this case. (ECF No. 16.)

For the reasons discussed below, I convert Defendants' motion to a motion for summary judgment and DENY the motion without prejudice.

### I.    Factual Background

Van Pelt alleges that on March 5, 2017, at approximately 10:30 pm, at the Quality Inn in East Haven, Connecticut, Defendants threw him to the ground and beat him in the course of taking him into custody. (ECF No. 1 ¶ 7.) Defendants allegedly caused Van Pelt to suffer a concussion, cervical sprain, a cracked rib, a broken tooth, and bruises and contusions. (*Id*. ¶ 7.) Van Pelt alleges that some of the severe physical and emotional injuries he suffered as a result of Defendants' actions may be permanent. (*Id*. ¶ 7.) Van Pelt also states that he has been diagnosed with post-concussion syndrome as a result of the incident. (ECF No. 17-1 ¶ 5.) Van Pelt filed this lawsuit on

1

May 23, 2017, alleging that Defendants inflicted unreasonable force upon him in violation of the Fourth Amendment, bringing a claim under 42 U.S.C. § 1983. (*Id.*)

Defendants move to dismiss the complaint, but seek to convert their motion to dismiss into a motion for summary judgment by submitting video recordings with audio as exhibits attached to their motion. (ECF No. 16.)[1] Below is a brief summary of the interaction depicted in the videos.

The video footage depicts an interaction between Van Pelt and multiple officers in the lobby of the Quality Inn. It begins by depicting Van Pelt seated in a chair in the lobby, in a relaxed position, with one leg draped over the other and his hands folded on his lap, and with three officers standing approximately five to ten feet away from him. The officers explain to Van Pelt that he is not in trouble or under arrest, but that he appeared to have medical problems and looked distressed. The officers ask him questions, including where he is coming from, where is he going, and how he got to the hotel. The officers ask whether he would like to go to the hospital, a shelter, or somewhere else. Van Pelt's pants have a large purple stain on them, and one officer comments that he can see Van Pelt has wine on his pants. One of the officers tells Van Pelt, "you gave me your ID card and started crying."

At one point, Van Pelt stands up from the chair and tells the officers not to put their hands on him. In the portion of the interaction depicted by the video footage, the officers had not yet touched him. Van Pelt asks to leave the premises. Officer Palma tells him that he appears intoxicated, and that he is not under arrest, but that the officers did not want him leaving the hotel.

---

[1] Lieutenant David Emerman of the East Haven Police Department, the Head of the Records Division, attests that the exhibits submitted by Defendants represent all of the video records that exist for Van Pelt's case. (ECF No. 16-7 ¶ 7.) The videos consist of recordings from six officers' body cameras. (*Id.* ¶¶ 8-13.) Exhibits 1 and 4 contain body camera footage from the Defendants. Because Defendant Rasile's body camera becomes obstructed at one point during the encounter, Defendants rely on the body camera footage from Exhibit 1 (Defendant Palma) and Exhibit 6 (Officer Kevin McGuire). (ECF No. 16 at 6.)

Another officer explains that they are concerned for his medical condition. Paramedics arrive at the scene during this interaction, and Officer Palma asks whether Van Pelt would let the paramedics check his vital signs. After Van Pelt asks to leave, the officers tell him he is not free to leave. Van Pelt says that he has the right to leave, advances towards the officers, and tells the officers, "put your hands on me." Using open hands, the officers put him into the chair and hold him in the chair, while Van Pelt begins to shout, "you are assaulting me," and that he wants his freedom. The officers tell him to relax while he continues to shout that he is being assaulted.

After Van Pelt rises up out of the chair and towards the officers, the officers handcuff Van Pelt, placing him face-down on the carpeted lobby floor. The officers sit him with his back propped up against the chair and step away from him. One of the officers tells the paramedics that Van Pelt was complaining of chest pains and that he is intoxicated. One paramedic approaches Van Pelt and begins questioning him, explaining that he is not a cop. Van Pelt says he wants to talk to his lawyer. Palma explains to one of the paramedics that the officers did not feel comfortable letting him leave the hotel. The officers again tell Van Pelt that he is not under arrest, but that he is in handcuffs in order to protect the safety of others, because he became agitated and combative. Van Pelt tells them to arrest him or release him. Van Pelt says that if they take off the handcuffs, he will shut his mouth and walk away.

One of the officers explains that they came to the hotel to respond to another call, but saw Van Pelt grabbing his chest; the officer tells a paramedic that Van Pelt had said he had asthma and a heart condition. The paramedic asks Van Pelt to come to the ambulance, and tells him that he is not under arrest. The paramedic says that Van Pelt will have privacy in the ambulance. Van Pelt then begins to stand up on his own, and the officers assist him in standing. One of the officers begins to remove Van Pelt's handcuffs, but Van Pelt sits back down before the handcuffs are

3

removed, and lies down on the floor after hearing that he will be put on a stretcher. The officers pull him up from the floor, telling him that he will hurt himself if he continues to put pressure on his wrists while handcuffed. Van Pelt shouts in what appears to be pain. The paramedic explains that the officers will put the handcuffs on Van Pelt's wrists in front of his body so that it will be easier for him and for the paramedics to examine him.

Palma looks at Van Pelt's identification card and makes a note on a notepad. Van Pelt says he does not want to go. An officer tells him he is creating a scene in a place that is trying to do business. The officer says Van Pelt will be just fine if he stands up. The officers lift him up and place him on a stretcher, lying on his side. They hold him down on the stretcher as he starts shouting repeatedly, "someone help me." The officers secure him to the stretcher with straps. The paramedics tell him to relax and take deep breaths. Van Pelt says he is "sorry," and asks if there is "any possible way to reconcile this." The paramedics say they will talk in the ambulance. Van Pelt is lifted into the ambulance.

The six body cameras show the same interaction from various angles. One body camera from Officer Dylan Northrop begins with Northrop driving to the hotel and arriving at the scene when the other officers are already interacting with Van Pelt in the lobby. Northrop says, "I see they got him on the ground now."

Another body camera depicts a man in the hotel lobby telling one of the officers that he knows Van Pelt. The video ends in the middle of the officer's conversation with the man about how he knows Van Pelt. (*See generally*, ECF No. 16-1 to 16-6.)

In response to Defendants' motion, Van Pelt submitted an affidavit stating that he had watched all of the videos Defendants submitted. (ECF No. 17-1 ¶ 2.) Van Pelt states in the affidavit that the "videos begin well after the most important events in this case," and that "[w]hen the

4

videos begin, several officers and one or more EMTs already ha[d] assembled in the hotel lobby, surrounding [him]." (*Id*. ¶ 3.) Van Pelt states that the videos "do not show the officers attacking [him] when [he] exited the hotel and in the parking area, rendering [him] temporarily unconscious, and bringing [him] back into the hotel." (*Id*. ¶ 3.) Van Pelt also states that "[w]hen the videos begin, one of the officers already has [Van Pelt's] identification in his hand," and that "[t]he officer obtained this after the initial assault . . . by reaching into [Van Pelt's] pocket while [he] was incapacitated . . . ." (*Id*. ¶ 4.) Van Pelt states that those events "took place outside of the hotel," while Van Pelt "was on [his] back, on the ground," and that "[a]n officer already had tackled [him] and placed his knee on [Van Pelt's] skull on the ground outside of the hotel." (*Id*. ¶ 4.) Van Pelt maintains that "[n]one of that is shown on the videos." (*Id*. ¶ 4.)

## II.    Legal Standards

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court's review is limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (internal quotation marks and citations omitted). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011). On summary judgment a court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013).

### III. Discussion

#### A. Conversion of Motion to Dismiss to Motion for Summary Judgment

Defendants submit video recordings with audio as exhibits to their motion to dismiss, seeking to convert the motion into a motion for summary judgment. Rule 12(d) allows the court to convert a Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment when the parties present matters to the Court outside the pleadings, and the parties are "given the reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "With respect to the latter notice requirement, the Second Circuit has stated that 'the essential inquiry is whether the appellant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.'" *Certified Multi-media Solutions, Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC*, 150 F. Supp. 3d 228, 236 (E.D.N.Y. 2015) (converting motion to dismiss to motion for summary judgment) (quoting *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985)). "[A] party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when both parties have filed exhibits, affidavits, counter-affidavits, depositions, etc. in support of and in opposition

to a motion to dismiss." *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008) (internal citation omitted).

Van Pelt submitted an affidavit responding to Defendants' characterization of the video evidence and presenting his recollection of the incident. Moreover, Van Pelt applies the summary judgment standard himself, arguing in his brief that the "interactions portrayed [in the videos] are themselves sufficiently ambiguous that a jury must ultimately decide whether the force used is or is not unreasonable . . . ." (ECF No. 17 at 2.) Thus, Van Pelt was on notice that the Court could convert the motion to dismiss to a motion for summary judgment. The Court therefore converts Defendants' motion to dismiss to a motion for summary judgment.

### B. Excessive Force

Defendants argue that the videos unequivocally show that they did not use excessive force, and that Van Pelt's claim fails as a matter of law. "[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop or other seizure of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis omitted). Determining the "reasonableness" of a particular use of force "requires careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flights." *Id*. at 396 (numerations added). Reasonableness "must be judged from the perspective of a reasonable officer on the scene at the moment the force is used." *Rogoz v. City of Hartford*, 796 F.3d 236, 246-47 (2d Cir. 2015) (internal quotation marks and alterations omitted). "In sum, the 'standard' to be applied in determining whether 'the amount of force' used exceeded the amount that was 'necessary' in the particular

7

circumstances is 'reasonableness at the moment.'" *Id*. at 247 (quoting *Graham*, 490 U.S. at 396, 397).

Defendants argue that Van Pelt's account of the incident is "blatantly contradicted" by the video evidence, and that summary judgment is warranted under the Supreme Court's decision in *Scott v. Harris*, 550 U.S. 372 (2007). *See also Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 482 (N.D.N.Y. 2017) ("while the video evidence submitted by the parties will certainly be considered and carefully reviewed at this juncture, *Scott* is best understood to permit the summary adjudication of a plaintiff's civil rights claim only in those exceptional cases where the video evidence in the record is sufficient to 'blatantly contradict[]' one party's version of events") (internal quotation marks omitted). Defendants concede that "claims of excessive force usually present material issues of fact," but cite a non-precedential case in which the Second Circuit affirmed a grant of summary judgment "where there was uncontroverted video of the encounter . . . ." (ECF No. 16 at 5 (citing *Kalfus v. N.Y. & Presbyterian Hosp.*, 476 Fed. Appx. 877 (2d Cir. 2012)).)

The video evidence here is not uncontroverted—Van Pelt states in his affidavit that the videos are incomplete and "begin well after the most important events in this case." (ECF No. 17-1 ¶ 3.) Van Pelt describes specific aspects of an encounter that occurred outside the hotel, and therefore are not portrayed in the videos, including "officers attacking [him] when [he] exited the hotel and [was] in the parking area, rendering [him] temporarily unconscious," officers "bringing [him] back into the hotel," an officer "reaching into [Van Pelt's] pocket to obtain his identification," and an officer "plac[ing] his knee on [Van Pelt's] skull on the ground outside of the hotel." (*Id*. ¶¶ 3-4.)

Defendants are correct that nothing in the video footage suggests that Defendants used excessive force while interacting with Van Pelt in the hotel lobby and placing him on a stretcher.

8

Nonetheless, genuine issues of material fact remain, in light of Van Pelt's affidavit, as to whether the video footage depicts the entire interaction between Defendants and Van Pelt. As the footage begins with Van Pelt seated in a chair in the lobby with at least three officers standing around him, it is unclear how the officers found Van Pelt and where and when the interaction began. Questions also remain as to how the officers obtained Van Pelt's identification—Officer Palma holds the identification card at one point in the video, but there is no point in the video at which he appears to obtain it for the first time, suggesting that the interaction initiated before the video footage begins. Finally, questions remain as to whether Van Pelt in fact suffered the medical injuries he alleges, and if so, how he could have developed those injuries if the entire interaction transpired as depicted in the video footage. It is true that aspects of the video raise credibility questions about the plaintiff's affidavit. For example, his statement that an officer "tackled" him outside the hotel and placed a "knee on [his] skull" before the events depicted in the video is difficult to square with his calm, relaxed, injury-free appearance at the outset of the video. But such credibility issues are for the fact-finder to resolve at a trial. The Court cannot grant summary judgment on this record.[2]

IV. **Conclusion**

For the reasons stated above, Defendants' motion to dismiss, or, in the alternative, for summary judgment, is DENIED without prejudice to refiling after the parties have engaged in discovery.

---

[2] Defendants argue that Van Pelt's statement in his affidavit that he was "tackled" outside the hotel, and that an officer "placed his knee on [his] skull on the ground" are not reflected in the Complaint and therefore are not part of the alleged assault. (ECF No. 18 at 2.) While the Complaint is sparse, Van Pelt's allegation that "in the course of taking the plaintiff into custody the defendants threw him to the ground and beat him" sufficiently encompasses the statements made in the affidavit. (*See* ECF No. 1 ¶ 7.)

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:	Hartford, Connecticut
	January 25, 2018